Filed 7/31/26  P. v. Simien CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JD WALLACE SIMIEN,<br><br>　　　　Defendant and Appellant. | C103244<br><br>(Super. Ct. No. 21FE018495) |

　　　　A jury found defendant JD Wallace Simien guilty of raping a woman (victim) and kidnapping her to commit the rape.  The jury also found a kidnapping special allegation true.  Defendant contends there was insufficient evidence to support the movement elements of the kidnapping offense and special allegation.  We disagree and affirm.  Statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

　　　　On December 10, 2013, victim planned to meet her cousin at a bowling alley after work around 9:00 p.m.  Victim took a bus part of the way and then walked on the sidewalk of Madison Avenue headed toward the I-80 freeway.  It was dark outside.  According to victim, Madison Avenue is "pretty busy for the most part until you get to the freeway overpass," at which point it's "all trees and bushes and no businesses."  There is also a fence to protect pedestrians "from falling off into the freeway."  The fence

1

ends at a certain point and there's a grassy or dirt area to the right, an area she later described as an embankment.

When victim reached the overpass, "something made [her] feel kind of … off." She turned around and saw somebody right behind her. She jumped closer to the traffic side of the street to let the person pass, but the man "ran up and grabbed [her] between [her] arms and [her] body." He lifted her off the ground and either dropped or threw her down the embankment. Victim felt like she "rolled down … a few feet at least" because of the embankment slope. She stopped rolling when her head hit a tree. Victim saw a "bit" of the man as he came down the embankment. He punched her in the face, and victim "somehow … ended up on the other side of the tree, laying on the ground" face down. Victim was screaming, and the man told her to shut up. She could hear cars on the freeway but "couldn't see anything." And she could not see the road she had been walking on. There was only "ambient light from the businesses a far ways off."

The man held down her lower back to buttocks area, pulled down her leggings, pantyhose, and underwear, moved up her jacket, shirt, and bra, pinched one of her nipples, and smacked her buttocks. When victim screamed, the man choked her and told her to shut up. He put her on all fours and inserted his penis inside her vagina. He raped her for "ten minutes, fifteen minutes maybe," but it "felt like an eternity." When he stopped, he told her to count to 100 before getting up. After counting to about 49, she ran up the embankment back to Madison and then all the way to the bowling alley.

After victim reported the crime, a sheriff's officer investigated the scene of the crime. He testified that the slope of the embankment is about 30 to 40 degrees and it levels out after about 30 to 40 feet. Victim also participated in a sexual assault examination where DNA evidence was collected, and a physical exam was conducted. According to the physical exam, victim had a small scratch in the middle of her chest; a

2

small scratch on her right shoulder; a bruise on her forehead; scratches on her hip and right buttock; multiple bruises on her elbows; and scratches on her hands.

Analysis of DNA evidence collected from defendant identified him as a potential contributor to the DNA collected from victim. Using cell phone data, law enforcement also connected defendant's phone to the area on the date of the rape.

The jury found defendant guilty of raping victim (the rape count) and kidnapping her to commit the rape (the kidnapping count). (§§ 261, subd. (a)(2); 209, subd. (b)(1).) As to the rape count, the jury found a special allegation true under the One Strike law that (1) defendant kidnapped victim and (2) defendant's movement of victim "substantially increased the risk of harm to [her] over and above that level of risk necessarily inherent in the underlying offense" (the kidnapping special allegation). (§ 667.61, subd. (d)(2).) Applying the One Strike law, the court sentenced defendant to 25 years to life and stayed the sentence on the kidnapping count. (§ 667.61, subd. (a).)

Defendant timely appeals.

**DISCUSSION**

Defendant contends the evidence was insufficient to support the movement element of the kidnapping count and the kidnapping special allegation. We disagree.

In reviewing for sufficient evidence, we review the entire record to determine whether there is reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We view the evidence in the light most favorable to the prosecution and presume the existence of every fact the jury could have reasonably deduced from the evidence. (*Ibid*.) Reversal for insufficient evidence is unwarranted unless " 'it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict. (*Ibid*.) In other words, if the circumstances justify the jury's findings, the reviewing court's opinion that the circumstances might also be reasonably reconciled

3

with a contrary finding does not warrant a reversal. (*People v. Waqa* (2023) 92 Cal.App.5th 565, 576 (*Waqa*).)

Relying on a commentary concerning the definition of kidnapping under the Model Penal Code, defendant contends the movement element of kidnapping under section 209 was not satisfied in this case. But he does not explain why a commentary on a Model Penal Code governs section 209. (See *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1393 [a treatise is not binding law]; *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 95 [treatise can be persuasive when there is an absence of precedent].) We decline to consider the commentary because there is well-established California law that reveals no merit to defendant's contention.

According to that well-established California law, there are two victim movement requirements for kidnapping to commit rape. (§ 209, subd. (b)(2); *People v. Rayford* (1994) 9 Cal.4th 1, 12.) First, the movement must be "beyond that merely incidental to the commission of" the rape. (*Ibid.*; § 209, subd. (b)(2).) And second, the movement must increase the risk of harm to the victim over and above that necessarily present in the crime of rape itself. (*Rayford*, at p. 12; § 209, subd. (b)(2).) The kidnapping special allegation requires a higher standard for the second requirement – namely, the movement must "substantially increase" the risk of harm to the victim. (§ 667.61, subd. (d)(2).) These two movement requirements are interrelated, not mutually exclusive. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1151-1152 (*Dominguez*).) Whether a forced movement was incidental to the crime is necessarily connected to whether it increased the risk of harm to the victim. (*Id.* at p. 1152.) Relevant considerations for increased risk of harm include the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. (*Ibid.*) The fact that these dangers do not materialize does not mean the risk of harm was not increased. (*Rayford*, at p. 14.) To determine whether the

movement requirements have been met, the jury must consider the scope and nature of the movement and the context of the environment in which the movement occurred. (*Id.* at p. 12.)

Here, a reasonable fact finder could find both requirements were proven beyond a reasonable doubt. Specifically, considering the scope and nature of victim's movement, a fact finder could make the following findings: (1) defendant did not need to move victim to rape her (see *Waqa*, 92 Cal.App.5th at p. 584 [the defendant could have raped the victim where he initially found her]); (2) based on the "time of night and the [location], … any passerby [on the freeway overpass] would likely be in a car, not on foot, and would not likely stop to look down the embankment into the [wooded area]" (*Dominguez*, *supra*, 39 Cal.4th at p. 1154); (3) cars driving on the freeway were also not likely to see victim behind a tree in the wooded embankment; and (4) the fact that victim could hear moving cars from the embankment in that area does not mean people in those cars could see or hear her. Based on those findings, a reasonable fact finder could conclude that the movement (1) was not incidental to the rape and (2) increased victim's risk of harm over and above that necessarily present in the rape itself. (See *People v. Shadden* (2001) 93 Cal.App.4th 164, 169 ["[W]here a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased"].)

Defendant asserts four counterarguments, none of which are persuasive.

First, he relies on the distance between where victim was walking on the freeway overpass and where she rolled. Describing victim's ending location as a "few feet away from the sidewalk," defendant contends his conduct did not constitute kidnapping. Defendant's focus on distance is misplaced. Although the standard for kidnapping originally depended exclusively on the actual distance moved, the California Supreme Court changed that standard in 1999. (*Waqa, supra*, 92 Cal.App.5th at pp. 577-578.)

5

Under current law, no minimum distance is required to satisfy the movement requirement, and the precise distance need not be proven.  (*Ibid*.)

Second, defendant contends the movement requirements were not satisfied because victim was not "completely remove[d]" from public view, citing *Dominguez*. But *Dominguez* did not require such "complete" removal.  In *Dominguez*, the defendant moved the victim about 25 feet from the shoulder of the road down an embankment and partially into an orchard.  (*Dominguez, supra*, 39 Cal.4th at p. 1151.)  The Court concluded the movement changed the victim's environment from "a relatively open area alongside the road to a place significantly *more secluded*, substantially decreasing the possibility of detection, escape or rescue."  (*Id.* at p. 1154 [italics added]; see *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1049 (*Aguilar*) [the defendant's movement of the victim down a sidewalk to a darkened area increased the victim's risk].)  Authorities have since established that "[m]oving a victim to a more isolated open area [that] is less visible to public view is sufficient."  (*Aguilar*, at p. 1049.)  Sufficient evidence supports that movement here.  For this reason, we reject defendant's attempt to analogize the facts of this case to those in *People v. Stanworth* (1974) 11 Cal.3d 588.  In *Stanworth*, there was "no evidence" that the victim's 25-foot movement from a road to an open field removed her from public view.  (*Id*. at pp. 597, 598.)  That statement does not extend to the evidence here.

Third, defendant contends victim's movement served only to facilitate the rape, so the movement was incidental to the rape under *People v. Daniels* (1969) 71 Cal.2d 1119 and *People v. Hoard* (2002) 103 Cal.App.4th 599, 677.  Defendant's focus on *his* purpose for the movement is misguided.  "[T]he relevant focus is on ' " 'the "scope and nature" of…the environment in which the movement occurred,' " ' not the defendant's purpose for moving the victim."  (*Waqa, supra*, 92 Cal.App.5th at p. 583.)  " 'Standing alone, the fact that the movement … of a victim facilitates [the associated crime] does not imply

6

that the movement was merely incidental to [that crime].' " (*Id*. at p. 584.) *Daniels* and *Hoard* are also distinguishable. Both considered movements within a building. (*Daniels*, 71 Cal.2d at p. 1140 [movement within a home]; *Hoard*, at p. 607 [movement within an office building].) As *Dominguez* explained, moving a victim from an open area alongside a road to a significantly more secluded place is unlike the "brief and trivial movements of the robbery victims around a room" in *Daniels*. (*Dominguez*, 39 Cal.4th at pp. 1153-1154.) And *Hoard* acknowledged that "a rape victim is certainly more at risk when concealed from public view and therefore more vulnerable to attack." (*Hoard*, at p. 607.)

And fourth, defendant contends the facts here are closer to the one movement in *People v. Diaz* (2000) 78 Cal.App.4th 243, 248. There, the defendant accosted the victim on the sidewalk and pushed her down on the "grassy strip immediately adjacent to the sidewalk, in full view of a major urban street." (*Id*. at p. 249.) The court commented that this movement "could easily be characterized as incidental, in that it effected no substantial change in the surroundings." (*Ibid*.) Here, victim's movement was different. According to trial testimony, victim was thrown or dropped into a more concealed, wooded area 30 to 40 feet below the overpass view. This was sufficient evidence for the jury to conclude victim's movement affected a substantial change in her surroundings. For the same reason, we reject defendant's contention that "every rape involving a shove, stumble, or [] brief physical repositioning" would satisfy the movement requirements. A reasonable factfinder could conclude this rape did not involve just a shove, stumble, or brief repositioning.

Specific to the kidnapping special allegation, defendant finds similarity between the facts of this case and those in *Waqa* and contends the risk to victim was not "substantially increased." (§ 667.61, subd. (d)(2).) We see no such similarity. In *Waqa*, the defendant forcibly raped the victim in the large stall of a public restroom after moving

7

her from a small stall. (*Waqa, supra*, 92 Cal.App.5th at p. 572.) The appellate court found insufficient evidence that the movement to the large stall substantially increased the victim's risk of harm because "the degree of concealment each stall offered did not significantly differ." (*Id*. at pp. 580-583.) Here, by contrast, a reasonable fact finder could conclude that the degree of concealment between the overpass sidewalk and the wooded embankment significantly differed. Specifically, the fact finder could conclude that the more concealed embankment substantially increased defendant's opportunity to sexually violate victim as he desired, substantially reduced the likelihood anyone would intervene, and substantially enhanced defendant's opportunity to commit additional crimes. Defendant himself manifested an increased risk to victim when he punched and choked her. (See *Aguilar, supra*, 120 Cal.App.4th at pp. 1049-1050.) Also, defendant made victim roll down a 30-to-40-degree hill until she hit a tree, exposing her to additional injury and increasing the risk of an escape attempt. Based on the totality of the circumstances, we have no trouble discerning sufficient evidence that the movement substantially increased victim's risk of harm.

**DISPOSITION**

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
EARL, P. J.

/s/
BOULWARE EURIE, J.

9